# Exhibit B

UNITED STATES  DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------x        19-MD-2903(GWC)
In Re:  Fisher-Price Rock 'n Play
Sleeper Marketing, Sales Practices,
and Products Liability Litigation


                                    Rochester, New York
                                    December 9, 2019
                                    10:09 a.m.

---------------------------x
**STATUS CONFERENCE**

                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE GEOFFREY W. CRAWFORD
                UNITED STATES DISTRICT JUDGE



FOR PLAINTIFF:        WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
                      BY:  DEMET BASAR, ESQ.
                      BY:  DANIEL TEPPER, ESQ.
                      270 Madison Ave.
                      New York, New York 10016


FOR PLAINTIFF:        CONNORS LLP
                      BY:  KATE G. HOWARD, ESQ.
                      1000 Liberty Building
                      Buffalo, New York 14202



FOR DEFENDANT:        MANATT PHELPS & PHILLIPS LLP
                      BY:  CRAIG JOSEPH de RECAT, ESQ.
                      BY:  ADRIANNE ELIZABETH MARSHACK
                      695 Town Center Drive, 14th Floor
                      Costa Mesa, California 92626


FOR DEFENDANT:        GOLDBERG SEGALLA, LLP
                      BY:  PATRICK B. NAYLON, ESQ.
                      Two State Street, Suite 1200
                      Rochester, New York 14614



COURT REPORTER:       Diane S. Martens, FCRR, RPR
                      Rochester, New York 14614

16

10:32AM  1          **THE COURT:**  So if we could put some meat on the

2      bones.  Could you -- I think all of this relates to

3      commonality type problems, gets expressed --

4          **MS. BASAR:**  Correct.

10:32AM  5          **THE COURT:**  -- in different ways through the

6      categories of the class action criteria.  But, really, it has

7      to do with common questions of fact.

8          **MS. BASAR:**  Sure.

9          **THE COURT:**  What are the arguments -- you're going

10:32AM  10     to get -- and defendant's been very clear about this --

11     you're going to get everything that left the company and went

12     out to the public.  That's easy.

13          What are the arguments about commonality that you

14     need to make that you need the internal marketing memos for?

10:32AM  15          **MS. BASAR:**  Yes.  We need to show that there are

16     common questions about this --

17          **THE COURT:**  Right.

18          **MS. BASAR:**  -- that the products, that the

19     marketing statements were false or they were written in a way

10:32AM  20     that they were misleading or that they omitted material

21     facts.  In order to get -- to be able to show that there's

22     common evidence of that, we need to show that defendants knew

23     that the product was unsafe.  I mean, the whole underlying

24     theory of our case is --

10:33AM  25          **THE COURT:**  Right.

10:33AM  1          MS. BASAR:  -- is that this product is unsafe for

2  infant sleep, defendants knew about it and they had reason to

3  know about it from the AAP guidelines, et cetera, and they,

4  nonetheless, continued to sell it for ten years and continued

10:33AM  5  to make money from it.

6          So, one element is to actually show that defendants

7  knew that in order to show that their statements are false

8  and misleading.

9          The other thing we need to show which is extremely

10:33AM  10  important is materiality.  Were their marketing statements

11  material?  The box said sleeper and the name of the product

12  is the market -- is the Rock 'n Play Sleeper.  We say that's

13  material.

14          The defendants indicated at the last hearing that

10:34AM  15  they're going to challenge that.  They're going to challenge

16  materiality based on how people interpret it, their marketing

17  statements.  Fine.  We need to come forward with affirmative

18  evidence not only to first make our case but to rebut their

19  evidence.

10:34AM  20          So they will have, as your Honor's mentioning,

21  market research studies concerning how people will --

22  reasonable consumers -- will interpret their marketing

23  statements and they will have internal documents showing, you

24  know, how they wanted to position this product.  Is it going

10:34AM  25  to be a sleeper for all night sleep or just sleep that's safe

10:39AM  1        **MS. BASAR:**  But we need to present a full record to

2    the Court and we, unfortunately, given the defendant's lack

3    of cooperation, frankly, over the past month, if you're, if

4    there is some kind of order that says, well, you know, just

10:39AM  5    relating to marketing but since you're, once your -- with

6    defendant's knowledge and scienter is, you know, has to be a

7    common, what would be a common question, we believe based on

8    our prior experience with the defendants over the past month,

9    that they will take that to mean, okay, we don't need to give

10:40AM  10   you any marketing materials --

11        **THE COURT:**  Right.

12        **MS. BASAR:**  -- that could possibly show that, you

13   know, defendants had knowledge that this product was unsafe.

14   And the question of defectiveness.  We used that word and we

10:40AM  15   all were happy with that word.  But this is not that kind of

16   case.  This is not a car that if it's defective and they

17   agree that it's dangerously defective, that, you know, that

18   would cover the a big part of the case.  This is about a

19   product that is unsafe for infant sleep.  We say throughout

10:40AM  20   the class period.  We say it's unsafe for infant sleep when

21   used as instructed with the restraints.

22        **THE COURT:**  Let me just keep focusing on your three

23   issues.  I understand what the record that you want on -- I

24   call it scienter but it's probably the wrong word -- but

10:41AM  25   state of mind of the company, materiality of the information