UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: FISHER-PRICE RNPS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) MDL No. 1:19-md-2903 ) ) ) This Document Relates To: ) ALL CASES |

**AMENDED ORDER ON MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
(Doc. 348)**

Plaintiffs have filed an unopposed motion for preliminary certification of a settlement class and preliminary approval of a proposed settlement in this multi-district litigation case. The court GRANTS the motion for preliminary certification and approval of the settlement. This order discusses the criteria and requirements for preliminary certification and approval and the reasons the court concludes that final approval is likely. In addition, the court has incorporated additional provisions from the proposed preliminary order submitted by the parties (Doc. 349-2).

**History of the Litigation**

By order dated August 1, 2019, the United States Judicial Panel on Multidistrict Litigation transferred ten putative class actions to the Western District of New York for pre-trial proceedings. These included six actions in the Western District of New York, two in the Central District of California, and one each in the District of Colorado and Northern District of Oklahoma. In addition, the transfer order identified six more tag-along actions in the Southern District of Iowa and the Western District of New York.

The transfer order identified the central issue in the case. "These actions share factual questions arising from allegations that [defendant] Fisher-Price's Rock 'n Play Sleeper (RNPS) is unsafe because, among other reasons, its angled design does not allow infants to sleep in a

1

supine position, which allegedly increases the risk that infants will suffer from positional asphyxia, plagiocephaly, and torticollis." (Doc. 1 at 1.) The lawsuits follow a voluntary recall of the RNPS conducted in April 2019 by the Consumer Product Safety Commission (CPSC).

On October 28, 2019, Plaintiffs filed a "Consolidated Amended Complaint" seeking relief on behalf of proposed classes of consumers who purchased or possessed the RNPS in the states of New York, New Jersey, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Iowa, Maryland, Massachusetts, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia and Washington. (Doc. 19.)

The court bifurcated class and merits discovery. (Doc. 12). The discovery on class issues went first and was voluminous. The court concluded that it would address the class certification issues state-by-state, starting with New York, where Fisher-Price and the transferee court are located. (Doc. 214.)

On February 25, 2022, the court held a hearing on the motion to celiify a New York class consisting of "[a]ll persons who purchased or owned any model of Fisher-Price RNPS in New York from 2009 to the present." *(See* Consolidated Am. Comply., Doc. 191244.)

On June 2, 2022, the court issued a decision certifying the New York class. (Doc. 254.) The court allowed six months for the completion of merits discovery. (Doc. 260.)

On October 5, 2022, the U.S. Court of Appeals for the Second Circuit issued its mandate concluding that an immediate appeal of the class certification decision was not warranted. (Doc. 269.)

On October 21, 2022, Plaintiffs filed a motion to certify a class in California. (Doc. 283.) The court scheduled a hearing for April 13, 2023.

2

On February 8, 2023, the court denied Defendants' motion to dismiss on standing grounds. (Doc. 304.)

On March 30, 2023, the court continued the California class action hearing. (Doc. 307.) The court understood through discussions with the court-appointed settlement master that the parties sought time to negotiate. The motion for preliminary approval describes a lengthy settlement process, commencing as early as September 2020 and continuing at intervals through July 2024 when the parties reached agreement on the proposed settlement.

Court hearings came to an end in the spring of 2023 while the parties participated in a series of mediation sessions and talks among counsel. These discussions have resulted in the proposed settlement agreement. (Doc. 349.)

## Personal Jurisdiction and Venue

The court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1331 and 1332.

Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions alleged by plaintiffs occurred in this district.

## Terms of the Settlement

The settlement proposed by the parties provides for certification of a nation-wide settlement class composed of owners or purchasers of the RNPS. Class members would receive reimbursement of all or part of the purchase price of the RNPS upon submission of a claim. In exchange, defendants would be protected from future claims by class members. The total value of the settlement is $19 million. The maximum potential payment is the purchase price for class members who purchased their RNPS between October 12, 2018 and April 12, 2019 (the date of

3

recall), still own the product and can provide proof of purchase. Payments decrease for class members who cannot provide proof of purchase or who purchased the product at earlier dates. The settlement provides for payments of between $35 and $10 for class members who no longer own the RNPS.

The parties propose a legal fee of $5,320,000 (28% of the total settlement fund) and reimbursement of litigation expenses up to $825,000. They propose service awards of $3,500 to individual class representatives.

The net settlement fund will be divided into three accounts: $4.75 million for Settlement Class Members who currently own an RNPS and did not participate in the Recall; $4.75 million for Settlement Class Members who do not currently own a RNPS, did not participate in the Recall, and have proof of purchase; and $1 million for Settlement Class Members who do not currently own an RNPS, did not participate in the Recall, and do not have proof of purchase. The proposed settlement also contemplates "set-aside funds" for late filers. It contains a provision for moving unused funds among the various accounts, depending on "up-take" by members of each category of consumers.

The settlement proposal includes provisions for notice by direct mail (both postal and email) as well as publication. The third-party claims administrator Kroll Settlement Administration LLC (Kroll) estimates that notice will reach 80% of class members an average of 3.7 times. Because the settlement contemplates a cash payment and a comprehensive release of future claims by all class members, there is an opt-out provision allowing any class member to remove herself from the class in order to pursue an independent claim or for any other reason .

## The proposed settlement class

The proposed settlement class consists of:

> All Persons in the United States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions who, during the Class Period, (a) purchased (including to be given as a gift to another Person) or acquired (including by gift) an RNPS, or (b) have an RNPS in their possession.
>
> Excluded from the Class are (i) Persons who participated in the Recall and received a cash refund; (ii) Persons who purchased an RNPS for the sole purpose of resale to consumers at wholesale or retail; (iii) Defendants, their subsidiaries, and their legal representatives, successors, assignees, officers, directors and employees; (iv) Plaintiff's Counsel; and (v) judicial officers and their immediate family members and associated court staff assigned to this case. In addition, persons or entities are not Settlement Class Members once they timely and properly exclude themselves from the Class, as provided in this Settlement Agreement, and once the exclusion request is finally approved by the Court.

Doc. 348-1 at 18-19.

## Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides the legal standard for preliminary approval of federal class actions. In cases involving a so-called "settlement class," not previously certified, there are three requirements. These are:

(1) a determination that the court should order notice of the proposal to the class. Fed. R. Civ. P. 23(e)(l)(A);

(2) a decision that the court is likely to "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(l)(B)(i); and

(3) a decision that the court is likely to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(l)(B)(ii).

The court's rulings on (2) and (3) direct its decision on (1).

The court first considers whether the settlement class is likely to be certified under the standards generally applied to class actions by Fed. R. Civ. P. 23(a) or 23(b)(3). Then the court turns to the special requirements applicable to the preliminary approval of settlements provided by Rule 23(e).

## Preliminary Approval

The court concludes that the factors guiding the preliminary approval decision support a ruling granting preliminary certification of the settlement class as well as preliminary approval of the settlement. These factors are sufficient to justify notice to the proposed class and the scheduling of a fairness hearing to consider final certification and approval of the settlement. The court concludes on a preliminary basis that the proposed settlement is fair and reasonable, that the class representatives and class counsel have adequately represented the settlement class, and that certification of a settlement class is appropriate.

The court appoints Demet Basar, James Eubank and Paul Evans as class counsel. Their address is Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., 218 Commerce Street, Montgomery, Alabama 36104. Tel: (800) 898-2034. Email: Demet.Basar@BeasleyAllen.com; James.Eubank@BeasleyAllen.com; Paul.Evans@BeasleyAllen.com.

The court appoints the following persons as class representatives for the proposed settlement class: Elizabeth Alfaro, Emily Barton, Linda Black, Luke Cuddy, Rebecca Drover, Megan Fieker, Karen Flores, Nancy Hanson, Jena Huey, Samantha Jacoby, Megan Kaden, Kerry Mandley, Cassandra Mulvey, Joshua Nadel, Melanie Nilius Nowlin, Daniel Pasternacki, Jessie Poppe, Katharine Shaffer, Emily Simmonds, Josie Willis, and Renee Wray.

I.  **Certification Under Fed. R. Civ. P. 23(a) or 23(b)(3)**

In certifying the New York class, the court has already addressed these issues within the context of a single large state. The issues of numerosity, commonality, typicality, and fair representation are very similar in the case of a national settlement class.

A.  **Rule 23(a)**

1.  **Numerosity**

There can be no doubt that a consumer class consisting of more than four million purchasers of a child-care product is sufficiently numerous for certification.

2.  **Common Questions of Law or Fact**

Although each state's consumer protection laws and related protections for purchasers of products vary, they share common characteristics in providing remedies for consumers who believe they were deceived about the safe use of the RNPS. Both sides recognize through the unopposed motion for approval of the settlement that the consumer claims grouped in this MDL are broadly similar. While a trial in any particular district would require the application of that state's consumer protection and warranty remedies, the members of the proposed settlement class all complain that concerns about the safety of their infant recliner make it unsafe to use. Because the design and marketing of the product was the responsibility of a single manufacturer, the proof and defense on liability issues are similar from one state to the next and the plaintiffs' claims of damage due to the inability to make safe use of the product-as they see it-are also very similar. The court is satisfied that common questions of law and fact are present.

3.  **Typicality**

The class representatives are all individuals who purchased the RNPS and used it without suffering personal injury. Their claims as consumers are very similar to those of other

consumers comprising the settlement class.

### 4. Fair and Adequate Representation

For the same reasons that their claims are typical of the class, the class representatives are likely to provide fair and adequate representation. Except for a modest service award, they will receive a small cash payment consistent with those paid out to other members of the settlement class.

### B. Rule 23(b)

The court has also considered the factors that govern class certification in the context of Fed. R. Civ. P. 23(b)(3). As they apply in this case, these factors are very similar to the Rule 23(a) requirements.

### 1. Common Questions of Law and Fact Predominate

Common questions of law and fact predominate in this case because a single defendant sold a single product. Although remedies vary somewhat from state to state, the core facts about the design and marketing of the Rock 'n Play are the same in every case. In addition, the remedy of some form of refund of the purchase price is similar in most cases.

### 2. Superiority of Class Treatment

This case involves millions of potential claims, all for relatively small amounts. Class treatment is the only practical remedy for consumers who seek the return of the purchase price of the RNPS. The court will not repeat the discussion of this issue in the context of the New York class. *(See* Doc. 254 at 31.)

### 3. Ascertainability

The criterion for membership is relatively simple: purchase or possession of the RNPS. With the availability of online receipts and ordering information and other documentation, it

should not be difficult in most cases to determine who falls within the class.

### 4. Conclusion on class certification of the settlement class

The criteria provided by Rule 23(a) and (b)(3) support certification of the settlement class. The court GRANTS the motion for preliminary certification of the settlement class. The court approves the proposed class description and the appointment of class counsel and the class representatives.

## II. Rule 23(e)(2) Factors

An order granting preliminary approval also requires a showing that the court is likely to "approve the proposal under Rule 23(e)(2)." Rule 23(e)(2) provides a list of factors the court must apply in determining whether a proposed settlement is "fair, reasonable, and adequate." These factors are:

A. Adequate representation of the class;

B. Arm's-length negotiation of terms;

C. Adequate relief, taking into consideration:

    i. The costs, risk and delay of trial and appeal;

    ii. The effectiveness of any proposed method of distributing relief, including the method of processing class-member claims;

    iii. The terms of any proposed award of attorney's fees, including timing of payment;

    iv. Disclosure of any agreements made in connection with the proposal.

D. Equitable treatment of class members relative to each other.

The court will address these factors first before also considering the so-called *Grinnell* factors that provide fm1her guidance.

A.   **Adequate Representation**

The legal representation provided by Plaintiffs' counsel, led by Demet Basar, Terrence Connors and James Eubank, has been excellent. The briefing and the engagement in lengthy discussions of the issues in the courtroom were consistently helpful and illuminating. The courtesy with which both sides treated one another was exemplary. The court also recognizes the leadership and excellent advocacy of attorney Matthew Kanny and his team from the Goodwin Procter firm.

In addition to a high level of professionalism, class counsel have consistently advocated for the interests of all members of the putative classes. The proposed settlement reflects the different experiences and potential claim value of different categories of consumers. The different levels of compensation for different segments of the settlement class reflect a reasonable approximation of different levels of loss. The court is satisfied that every segment within the class was fairly represented.

B.   **Arm's-Length Negotiation**

The negotiation of the settlement was complex and protracted. The court's special settlement master Christopher Ekman was assisted by two outside mediators. The court has every confidence that the parties negotiated the amount of the settlement and its terms in an arm's-length manner and with loyalty to their clients.

C.   **Adequacy of Relief**

   1.   **Costs and Risks of Litigation**

This was not an easy case for either side. Because children and their parents who had sustained personal injury or death were excluded from the various lawsuits *(see* Doc. 210 (noting that the MDL proceeding is limited to refund claims and does not cover death or injury claims)),

10

the class members are primarily parents who used the RNPS without incident during their children's infancy. Most consumers appear to have been satisfied with the product until they learned of the hazards that gave rise to the recall in April 2019. The parties battled over how to value the recall of an infant sleeper with which a family might have fond memories and no bad experiences. *(See* Doc. 210 (discussion of conjoint analysis of damages).)

The claims arose under state law and may generally be described as consumer-protection claims of false advertising, augmented with claims of breach of warranty. In states requiring proof that viewing an advertisement caused a parent to make a purchase, the task of proving causation in multiple cases would be challenging.

Plaintiffs were not the only parties with litigation risk. There was evidence of advertising by the defendants that showed the use of the RNPS as just that-a place for babies to sleep. Because the case is settling before any merits hearing, the court makes no finding concerning defect or safety of the RNPS. Defendants maintain that the RNPS is safe. Plaintiffs follow the CPSC in concluding that the RNPS presented a hazard to infants. The potential evidence of death and injury to some children presented a significant litigation risk to defendants. The facts of the case supported compromise by both parties.

### 2. Proposed Distribution

In contrast to settlements calling for the distribution of pennies or coupons to class members, the individual settlement amounts proposed in this case are sufficient to motivate many people to fill out an online claim form in exchange for a cash payments equivalent to the purchase price, less some discount for use or the difficulty of proving purchase. The third-party administrator Kroll is experienced in class action settlements. The proposed settlement includes a comprehensive plan for notice and a relatively easy procedure for obtaining payment. The

11

court is satisfied that the proposed distribution plan is likely to be approved at a final hearing.

### 3. Attorney' Fees

The 28 percent figure falls within the range of reasonable contingency fees. *See, e.g., Fero v. Excellus Health Plan, Inc.*, No. 15-cv-06569, 2022 WL 1292133, at *3 (W.D.N.Y. Apr. 29, 2022) (fee representing approximately one-third of $10.66 million settlement was reasonable). The court will wait for the final hearing and an opportunity to hear any objections before making a final decision about the legal fees and expenses.

### 4. Other Agreements

There appear to be no additional agreements requiring disclosure under Fed. R. Civ. P. 23(e)(3).

### D. Equitable Treatment

The distinctions between class members relate to how long they owned the RNPS and whether they can demonstrate proof of purchase. Those who purchased the product closest to the date of recall receive higher payments because they were able to use the sleeper for less time. These distinctions appear fair and recognize the differences in the experiences of different groups of parents.

## III. *Grinnell* Factors

In addition to the criteria set out at Fed. R. Civ. P. 23(e), the court has considered the factors developed in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

### A. Complexity, Expense and Likely Duration of the Litigation

Resolving the consumer claims in multiple states through trial would have been complex, expensive, and very long in duration. It would require the same procedures that the court and the parties commenced in the Western District of New York: class certification (with a potential

interlocutory appeal) followed by the completion of merits discovery and a return of the case to a district judge in each of the districts in which a class was certified. State consumer remedies differ so each case would require a round of dispositive motion practice to weed out the claims lacking in merit. Each district would then conduct a trial on common liability issues and a relative handful of damage claims. Following any appeal, each district would have to develop some legal mechanism for determining individual damages in thousands of cases.[1]

This factor strongly supports the proposed settlement. Speaking candidly, there are no practical alternatives.

### B.     Reaction of the Class to the Settlement

The court will consider this factor after notice goes out to the potential class members and the court receives responses.

### C.     The Stage of the Proceedings and the Amount of Discovery Completed

This case appears to be at a Goldilocks moment: enough discovery has been completed that both parties are satisfied that they understand the other's position and likely proof. The expense and time required to complete merits discovery is considerable and provides an incentive to both sides to settle now. Following the CPSC recall and the exchange of class discovery, both sides now understand the general shape and scope of the evidence at trial.

---

[1] One of the benefits of accepting an MDL assignment is the opportunity to attend the annual transferee judges' conference. At the conference in November 2023, I attended with the goal of meeting at least one district judge who had tried a consumer class action to a jury verdict. Despite attending break-out sessions devoted to consumer actions and approaching speakers and panel members with my question, I could not find a judge who had actually tried one or more of these mass consumer claims cases. My quest finally became embarrassing since everyone (except me) understood that the cases are always settled. Actual jury trials of small-dollar consumer claims are rare.

### D. The Risks of Establishing Liability

The court has already discussed the litigation risks faced by both sides.

### E. The Risks of Establishing Damages

The risk to the plaintiffs in establishing damages is that many people who owned and used the RNPS before the recall in 2019 suffered no ill effects and appreciated the chance to park their infant in a seat that soothed him or her with movement. The court and the parties started to litigate the admissibility of the "conjoint damages" theory through the *Daubert* motions filed by the defense. Conjoint analysis purports to offer an alternative measure of damages based on statistical surveys of consumer preference. Whether the court and, ultimately, a jury would accept such a theory of damages presents serious risk to plaintiffs.

### F. Risks of Maintaining the Class Action Through the Trial

This factor does not seem relevant to this case. The court's limited experience with the class action representative in New York State is that she was a strong advocate for the cause of infant safety as she saw it and was prepared to see the case through to a conclusion.

### G. Ability of the Defendants to Withstand a Greater Judgment

The parent defendant Mattel Corporation is a large, successful company that could pay much more than the amount of the proposed settlement if it lost at trial.

### H. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery

The information available to the court is that most people bought the RNPS for about $50-$75. Some paid more. Some paid less at yard sales or received hand-me-downs from friends and relatives. The tiers of proposed settlement payments are generally in line with the amounts paid after some discount for the years of use by many families. This case is not like the token payment cases in which consumers are offered nothing of real value in exchange for the

14

extinguishment of their claims. If a consumer chooses to submit a claim, she is likely to receive a substantial percentage of the original purchase price of the RNPS.

### I. Range of Reasonableness of the Fund to Possible Recovery in Light of Risks

As this discussion indicates, the court is satisfied that the compromise reflected in the proposed settlement falls within the range of reasonable outcomes, especially when the court considers the high cost, delay, and risk of merits litigation. Taken as a whole, the *Grinnell* factors support the proposed settlement.

### IV. Administrative Matters

The court addresses the principal administrative issues on which the parties have reached agreement.

#### A. Notice to the Class

The motion for preliminary certification and approval includes a detailed plan for providing notice to the proposed class members in Spanish and English. (Doc. 349-3.) The plan includes direct notice by email and by postal delivery as well as notice by publication. The notice process will be conducted by the settlement administrator Kroll -- a company that has developed and executed notice plans in multiple class actions. The notice plan is appropriate and reasonably calculated to provide actual notice to purchasers and owners of the RNPS.

The court appoints Kroll Settlement Administration LLC as the Settlement Administrator. The court approves the notice plan and authorizes the settlement administrator to disseminate notice. The court also authorizes publication of the Long Form Notice on the settlement website and as requested by first class mail. The court also authorizes the settlement administrator to comply with the Class Action Fairness Act, 28 U.S.C. § 1715, including notice as appropriate to state and federal officials. The cost of the CAFA notice shall be borne by the defendants.

### B. Claims Administration

Kroll will also manage the administration of claims. The motion for preliminary approval describes a relatively simple procedure for obtaining payment through online or hard copy application. Showing proof of purchase or ownership and providing evidence that the RNPS has been disabled are uncomplicated and does not require returning the plastic hubs that were a feature of the CPSC recall. The court anticipates that a purchaser or owner who chooses to submit a claim will be able to do so quickly and without difficulty.

### C. Tax issues

The court is not prepared at this time to adopt the proposed findings concerning tax treatment of the settlement. It is likely that the settlement fund is a "qualified settlement fund" but the court is reluctant to accept the parties' representation without fully understanding the issue. By the time of the fairness hearing, the court anticipates that the parties will file a short memorandum explaining the issue in enough detail that the court can adopt the parties' position.

### D. Schedule

The court has set out a schedule of dates on a separate order. This schedule includes a date for a final approval hearing as well as the various deadlines leading up to that hearing. At the hearing, the court will consider final approval of the settlement, entry of final judgment, and approval of the requests for the fees and expenses of class counsel and the service awards for class representatives. The court will also hear any objections.

### E. Exclusion from the class

Any settlement class member who wishes to be excluded from the settlement class must mail a written Request for Exclusion to the Settlement Administrator at the address provided in the Long Form Notice, postmarked on a dated ordered by the Court, specifying that they wish to

be excluded and otherwise complying with the terms stated in the Long Form Notice. The Settlement Administrator shall forward copies of any written requests for exclusion to class counsel and defendants' counsel. A list reflecting all requests for exclusion shall be filed with the court by the Settlement Administrator no later than five (5) days before the Final Approval hearing. If a potential class member files a request for exclusion, they may not also file an objection under Section VI of the settlement agreement. The deadline for opting out of the settlement class is December 30, 2024.

### F. Objections to the proposed settlement

Any person in the settlement class who does not opt out of the class may object, directly or through a lawyer at their expense, to the settlement agreement, the fee application or the requested service awards to the class representatives. Objections must be filed electronically with the court, or mailed to the Clerk of the Court, Class Counsel and counsel for Defendants at the following address:

a) Clerk of the Court

   Clerk of the Court
   United States District Court for the Western District of New York
   2 Niagara Square
   Buffalo, N.Y. 14202

b) Class counsel

   Demet Basar
   James Eubank
   Paul Evans

   Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
   218 Commerce Street
   Montgomery, Alabama 36104

   Tel.: (800) 898-2034

      Email: Demet.Basar@BeasleyAllen.com
      Email: James.Eubank@BeasleyAllen.com
      Email: Paul.Evans@BeasleyAllen.com

  c)   Counsel for Fisher Price and Mattel

      Mathew P. Kanny
      Goodwin Procter LLP
      520 Broadway, Suite #500
      Santa Monica, California 90401

      Tel: (424) 436-3001

      Email: MKanny@goodwinlaw.com

      Lori G. Cohen Greenberg Traurig LLP
      Terminus 200
      333 Piedmont Road NE Suite 2500
      Atlanta, Georgia 30305

      Tel. (678) 553-2100

      Email: cohenl@gtlaw.com

To be timely, an objection must be (1) filed electronically with the Court on or before December 30, 2024, or (2) mailed to the Clerk of the Court with a postmark dated on or before December 30, 2024, with copies provided to Class Counsel and Defendant's counsel. For a timely objection to be considered by the court, the objection must set f011h:

  (i)     The case number and name of the Action (this lawsuit);

  (ii)    The objector's full name, current residential address, mailing address (if different), telephone number, and e-mail address;

  (iii)   An explanation of the basis upon which the objector claims to be a Settlement Class Member, including the model of the RNPS, the place of purchase, the purchase price, and whether the RNPS is currently owned by the class member;

  (iv)   Whether the objection applies only to the objector, to a specific subset of the

settlement class or to the entire settlement class and all grounds for the objection, accompanied by any legal support for the objection known to the objector or his or her counsel and any documents supporting the objection;

(v) The number of times the objector has objected to a class action settlement within the five (5) years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

(vi) The full name, telephone number, and address of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement agreement and/or the request for attorneys' fees and expenses;

(vii) The identity of all counsel representing the objector who will appear at the final approval hearing;

(viii) A list of all persons who will be called to testify at the final approval hearing in support of the objection;

(ix) A statement confirming whether the objector intends to personally appear and/or testify at the final approval hearing; and

(x) The objector's dated signature.

**G.   Stay/Bar of Other Proceedings**

Pending the Final Approval Hearing and the court's decision whether to grant final approval, no settlement class member (including class members who elect to be excluded from the settlement class) shall commence, continue or prosecute any claim or lawsuit that may be

released through the proposed class settlement.

H.  **Effect of failure to approve the settlement**

In the event that the settlement is not approved by the court, the court will declare the settlement agreement to be null and void and will lift any stay order. The parties shall be restored to their prior positions in the litigation. The court will conduct a hearing to schedule further hearings in this MDL proceeding. The defendants shall bear the costs of the Settlement Administrator up to $250,000. Plaintiffs and their counsel shall not be responsible for these costs.

## Conclusion

The court grants the motion for preliminary certification of a settlement class and approval of class action settlement (Doc. 348).

Dated this 26th day of August, 2024.

/s/ Geoffrey W. Crawford
Judge, U.S. District Court