UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: FISHER-PRICE ROCK 'N PLAY SLEEPER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 1:19-md-2903<br><br>This Document Relates to: ALL CASES<br><br>Hon. Geoffrey W. Crawford |

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO EXCLUDE THE DECLARATION AND OPINIONS OF PLAINTIFFS' <u>EXPERTS BRUCE SILVERMAN AND DR. J. MICHAEL DENNIS</u>**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | Introduction | | 1 |
| II. | The Court Should Exclude the Dennis Survey and the Opinions Based on that Survey | | 1 |
| | A. | The Dennis Survey and the Opinions Based on that Survey Are Unreliable | 1 |
| | | 1. Plaintiffs' Renewed Opposition Provides No Support to Dispute the Unreliability of the Dennis Survey | 1 |
| | | 2. In the Aggregate, the Unreliability Factors Go To Admissibility | 3 |
| | | 3. Plaintiffs Are Unable to Dispute that Other Courts Have Excluded Dr. Dennis's Testimony for Similar Reliability Issues | 4 |
| | B. | Plaintiffs' Opposition Fails to Sufficiently Dispute That the Dennis Survey And His Opinions Based Thereon Are Not Relevant | 5 |
| III. | The Silverman Declaration Is Unreliable | | 6 |
| | A. | Plaintiffs' Renewed Opposition Confirms that Mr. Silverman is Unqualified to Opine on Materiality in This Case Because He Has No Relevant Experience | 6 |
| | B. | Plaintiffs' Opposition Does Not Salvage Mr. Silverman's Unreliable Methodology Which Is Based Only on Speculation and Guesswork | 9 |
| | C. | The Silverman Declaration Should be Excluded Insofar as It Contains Improper Opinions Regarding Fisher-Price's Intent | 10 |
| IV. | Conclusion | | 10 |

# TABLE OF AUTHORITIES

**Cases:**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)......................................................................................................9

*Ancho v. Pentek Corp.*,
   157 F.3d 512 (7th Cir. 1998) ....................................................................................................8

*Arista Recs. LLC v. Lime Grp. LLC*,
   No. 06-cv-5936, 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ..................................................8

*In re Autozone, Inc.*,
   No. 3:10-md-2159, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016)...........................................4

*Bailey v. Rite Aid Corp.*
   338 F.R.D. 390 (N.D. Cal. 2021)...............................................................................................9

*Colangelo v. Champion Petfoods USA, Inc.*,
   No. 18-cv-1228, 2022 WL 991518 (N.D.N.Y. Mar. 31, 2022) .................................................7

*Dreyer v. Ryder Auto. Carrier Grp., Inc.*,
   367 F. Supp. 2d 413 (W.D.N.Y. 2005)......................................................................................8

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013).......................................................................................................2

*In re KIND LLC*,
   627 F. Supp. 3d 269 (S.D.N.Y. Sept. 9, 2022) ..............................................................1, 4, 5

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007).....................................................................................4, 8

*Medisim Ltd. v. Bestmed LLC*,
   861 F. Supp. 2d 158 (S.D.N.Y. 2012)........................................................................................4

*Packard v. City of New York*,
   No. 15-cv-7130, 2020 WL 1479016 (S.D.N.Y. Mar. 25, 2020)................................................8

*Procter & Gamble Pharm., Inc. v. Hoffmann-LaRoche Inc.*,
   No. 06-cv-34, 2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006) .....................................................4

*Rydman v. Champion Petfoods USA, Inc.*,
   No. 18-cv-1578, 2023 WL 3172466 (W.D. Wash. May 1, 2023) .............................................7

*Stuve v. Kraft Heinz Co.*,
   No. 21-cv-1845, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023).....................................................5

*Valador, Inc. v. HTC Corp.*,
  242 F. Supp. 3d 448 (E.D. Va. March 15, 2017) .................................................................2, 4

*Water Pik, Inc. v. Med-Sys., Inc.*,
  726 F.3d 1136 (10th Cir. 2013) .............................................................................................3

*Weiner v. Snapple Beverage Corp.*,
  No. 07-cv-8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) .............................................10

**Rules and Regulations:**

Fed. R. Evid. 702 ............................................................................................................1, 8

I.  **INTRODUCTION**

Dr. Dennis's and Mr. Silverman's opinions fail to satisfy Rule 702 for many reasons, as Defendants have explained. *See* Mem. in Support of Defs.' Renewed Mot. to Exclude (Dkt. No. 306-1) ("Mot."). Plaintiffs argue that these issues go to the opinions' weight rather than their admissibility. *See* Pls.' Renewed Opp. (Dkt. No. 314) ("Opp."). As described below, however, other federal courts have excluded Dr. Dennis and Mr. Silverman for the exact reasons Defendants identify here. *See infra* Part II.A.3 and n.6. Applying the proper analysis in its role as the gatekeeper, the Court should similarly exclude the challenged opinions.[1]

II. **THE COURT SHOULD EXCLUDE THE DENNIS SURVEY AND THE OPINIONS BASED ON THAT SURVEY**

   A.  **The Dennis Survey and the Opinions Based on that Survey Are Unreliable**

As Defendants explained in their Renewed Motion (at 6–13), Dr. Dennis's survey is not based on reliable principles or methods. In response, Plaintiffs merely offer Dr. Dennis's self-serving and conclusory assertions that his methodology is valid and argue that the criticisms of his survey go to weight rather than admissibility. The Court should reject Plaintiffs' arguments.

   1.  **Plaintiffs' Renewed Opposition Provides No Support to Dispute the Unreliability of the Dennis Survey**

Defendants' Renewed Motion explains (at 6–13) how the Dennis Survey is biased and unreliable for several reasons, including the survey's: (i) failure to replicate realistic marketplace

---

[1] Plaintiffs argue (Opp. 1 n.2) that Defendants' renewed motion is "procedurally improper" because Defendants filed it "more than two months *after* Plaintiffs' [motion to certify a California class] was fully briefed." But Plaintiffs identify no procedural rule, scheduling order, or local practice that required Defendants to file their motion sooner. Nor do Plaintiffs identify any prejudice they suffered from the motion's timing. Plaintiffs also suggest (Opp. 3) that a reply is warranted only "on the single newly raised issue" regarding *In re KIND*. But Plaintiffs' renewed opposition copies all of the arguments from Plaintiffs' original opposition. To facilitate this Court's consideration, this reply memorandum does the same. The Court need not review the original briefing, because all arguments are now contained in this renewed briefing.

1

conditions; (ii) use of leading, closed-ended questions; (iii) "materiality" tests suffering from order, demand, yea-saying, and focalism defects; and (iv) failure to use appropriate (or any) controls. Tellingly, Plaintiffs do not offer any authority finding that a methodology with the same problems as Dr. Dennis's Survey met the *Daubert* requirements. Rather, Plaintiffs offer only Dr. Dennis's own self-serving affirmations that his methodology passes muster.

For example, Plaintiffs' only response to the fact that the Dennis Survey fails to replicate realistic marketplace conditions because it limits consumers' view to certain portions of the packaging was to cite more of Dr. Dennis's own justification that he wanted to avoid "clutter[]" and so only "showed respondents the *relevant* panels of the packaging." (Opp. 8–9.) By "relevant," Dr. Dennis must mean the portions of the packaging that would bias the results to the conclusions Plaintiffs wanted, because he purposefully excluded portions of the packaging showing any non-sleep related benefits, such as a large photo of an awake baby playing with a toy—*i.e.*, portions that would support Defendants' position. If the survey was intended to determine consumers' takeaway messages from the product packaging, Dr. Dennis may not cherry-pick only favorable potions of the packaging to create a misleading impression of the messages—which is exactly what he did.[2] *See Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial," and a party "may not misquote or misleadingly excerpt the language of the advertisement");[3] *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448,

---

[2] Plaintiffs argue (Opp. 9) that "none of the cases Defendants cite . . . hold that a survey must use the entire image of the packaging to be admissible." This statement mischaracterizes Defendants' argument, which is that many cases exclude surveys that provide survey participants with a misleading or incomplete impression of the advertising message.

[3] Plaintiffs attempt to distinguish *Fink* by arguing (Opp. 9–10) that it involved "specific text from a single advertisement," whereas Plaintiffs' case involves "an overall marketing strategy that told parents the RNPS was safe for use with babies, when, in fact, the product posed

2

461 (E.D. Va. March 15, 2017), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (excluding survey that neglected to include certain "styling, words, symbols or images" "as they appear in commerce"); *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136 (10th Cir. 2013) (upholding exclusion of a survey that did not show parties' marks as they actually appeared on packaging).

Plaintiffs attempt to validate the propriety of Dr. Dennis's biased safety warning by comparing it to one proposed by Plaintiffs' damages expert Colin Weir. Plaintiffs argue (Opp. 7–8) that the flaws in Mr. Weir's declaration and proposed conjoint survey did not lead the Court to exclude his opinions because the issues went to weight rather than admissibility. But that fact that Dr. Dennis repeats Mr. Weir's specific design flaws does not resuscitate his analysis. As explained below, these are just some of *many* design flaws that, together, require exclusion.

With respect to the Dennis Survey's repeatedly calling attention to his inflammatory safety warning, Plaintiffs argue (Opp. 10) that showing the warning twice on two separate screens does not constitute "repeatedly." But by definition something shown more than once is "repeated." And the fact that an inflammatory warning being shown "only" twice—in **BOLD AND ALL CAPS**—is hardly a defense to the warning itself. As to this critique, Plaintiffs merely quote Dr. Dennis's own opinion that "what I've done here is perfectly legitimate." (*See* Opp. 10 [quoting Ex. A (Dennis Tr.) at 330:10–331:4].) But Dr. Dennis is wrong, and his say-so does not make his analysis reliable.

### 2. In the Aggregate, the Unreliability Factors Go To Admissibility

As to the other sources of unreliability in the Dennis Survey—*i.e.*, (i) the leading, closed-ended questions; (i) the order, demand, yea-saying, and focalism defects in the materiality test;

---

significant safety risks." But if this description of Plaintiffs' theory is accurate, it was *more* important for Dr. Dennis to include the entirety of the packaging and simulate real world marketplace conditions rather than cherry-pick specific text that is not actually at issue.

and (iii) the failure to use appropriate controls—Plaintiffs either contend that these problems go to weight (without disputing that they are present) or rely on Dr. Dennis to support himself. (Opp. 5–13.) Plaintiffs attempt to distinguish cases where courts held these reliability issues went to admissibility, while citing examples of cases where courts held they went to weight (*id.*). That misses the point. The Dennis Survey is not unreliable because of one single flaw—it is unreliable because it has *many* flaws that, in the aggregate, render it inadmissible, as the cases cited in Defendants' Renewed Motion make clear. *See, e.g.*, *In re Autozone, Inc.*, No. 3:10-md-2159, 2016 WL 4208200, *15–19 (N.D. Cal. Aug. 10, 2016), *aff'd*, 789 F. App'x 9 (9th Cir. 2019) (numerous "substantial deficiencies" in methodology rendered survey unreliable and inadmissible); *Medisim Ltd. v. Bestmed LLC*, 861 F. Supp. 2d 158, 180 (S.D.N.Y. 2012) (excluding survey because of multiple design flaws whose "combined impact is too significant to overlook"); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562–63 (S.D.N.Y. 2007) (survey was "so flawed as to be completely unhelpful to the trier of fact"); *Procter & Gamble Pharm., Inc. v. Hoffmann-LaRoche Inc.*, No. 06-cv-34, 2006 WL 2588002, at *21, n.60 (S.D.N.Y. Sept. 6, 2006) (suggestive closed-end questions, lack of proper controls, order bias, and other errors together create "a host of concerns that, in combination, render [surveys] inadmissible."); *Valador*, 242 F. Supp. 3d at 459 (multiple "fundamental flaws, taken together, render[ed] the survey so unreliable as to be inadmissible"). This Court should similarly find that the substantial number of deficiencies in the aggregate warrant exclusion of the Dennis Survey.

      **3.**      **Plaintiffs Are Unable to Dispute that Other Courts Have Excluded Dr. Dennis's Testimony for Similar Reliability Issues**

As Defendants explained (Mot. 13–14), the court excluded Dr. Dennis's testimony in *In re KIND LLC*, 627 F. Supp. 3d 269 (S.D.N.Y. Sept. 9, 2022), because he committed the same methodological flaws that Defendants raise here. Plaintiffs counter (Opp. 16–17) that *KIND* is

4

"distinguishable" because the *KIND* survey involved "the definition of a particular phrase," whereas the survey here "deals with the [alleged] omission of a product characteristic." That is not a *material* distinction. The fact that the survey in this case has a slightly different aim has no bearing on the specific flaws the *KIND* court identified.

Take Dr. Dennis's decision to use only part of a product's label, which he did in both *KIND*, *see* 627 F. Supp. 3d at 288 ("Dr. Dennis chose to display the 'All Natural' claim in isolation, rather than as part of the 'All Natural/Non GMO' statement, as it always appeared on KIND labels."), and here (Mot. 8–9 [describing how Dr. Dennis cherry-picked portions of the RNPS package, rather than displaying the package in its entirety]). Plaintiffs have not explained why that choice undermines one survey but not the other. It plainly undermines both: cherry-picking product labeling is problematic regardless of whether a survey is analyzing the effect of a particular *included* phrase (as in *KIND*) or the effect of an allegedly *omitted* phrase (as here).

The same is true of the other flaws identified in *KIND*. (*See* Mot. 13–14.) Each of them carries over to this case, and Plaintiffs have not shown otherwise.[4]

### B.   Plaintiffs' Opposition Fails to Sufficiently Dispute That the Dennis Survey And His Opinions Based Thereon Are Not Relevant

The Dennis Survey is also not relevant given that, as Dr. Dennis admitted, his survey does not test the perceptions derived from, or the materiality of, any specific advertising claims, and does not test the materiality of any sleep-related omission. (Dkt. No. 222-3, Ex. A to

---

[4] Plaintiffs cite (Opp. 16–17) a statement in *Stuve v. Kraft Heinz Company*, No. 21-cv-1845, 2023 WL 184235 (N.D. Ill. Jan. 12, 2023), about the supposed "difference between a survey asking about a person's understanding of the meaning of a word in context and one asking about a person's own concerns." *Id.* at *10. But *Stuve* did not consider the issue here: whether there is a difference between these types of surveys *with respect to a specific set of methodological flaws*. In fact, *Stuve* declined to consider the movant's assertion that the survey was methodologically flawed because the case was still at the pleading stage. *Id.* at *9.

5

Marshack Decl. [Dennis Dep.] at 286:18–25, 296:22–298:13, 312:1–315:17; *see also*, Dkt. No. 223-1 [Rebuttal Kivetz Report] ¶¶ 127; Mot. 14–15.)  Plaintiffs' only response (Opp. 7) is that referring to the product as a "sleeper" in the disclaimer "obviously relates to sleep."  Plaintiffs provide no evidence that the survey respondents understood this, and their argument is inconsistent with the opinion of Mr. Silverman, who says that the word "sleeper" is the only noun in the product name (*see*, *e.g.*, Dkt. No. 202-3 [Silverman Report] ¶ 44), and thus, a shorthand for referring to the product in general, rather than any one of its specific uses.  Thus, Plaintiffs' attempt to dispute the irrelevance of the Dennis Survey fails.[5]

### III.    THE SILVERMAN DECLARATION IS UNRELIABLE

#### A.    **Plaintiffs' Renewed Opposition Confirms that Mr. Silverman is Unqualified to Opine on Materiality in This Case Because He Has No Relevant Experience**

Plaintiffs concede many points raised in Defendants' Renewed Motion, which establish that the Silverman Declaration fails *Daubert*'s standard for admissibility and must be excluded. Plaintiffs admit that Mr. Silverman's opinions are based solely upon his industry experience but that he has *no* relevant industry experience marketing baby durable products like the RNPS. Plaintiffs merely argue (Opp. 18) that it is "immaterial" that he lacks this relevant experience because the baby durables market is not a "specialized market" and his opinions are "well-founded" based on his general marketing experience.  Plaintiffs are wrong.

First, Plaintiffs' unsubstantiated claim that the baby durables market is not unique is belied by the work of third parties who isolate, research, and report on this market specifically.

---

[5] Plaintiffs argue (Opp. 15) that the Dennis Survey shows the materiality of a purported safety disclosure made in the "least incendiary way."  Not only is this argument irrelevant to the survey's admissibility, the survey actually shows after being told that "actual injuries and fatalities" occurred in the product, nearly 60% of consumers would *still* purchase it. (Mot. 1.)

(*See, e.g.*, Dkt. No. 166-85 [Mintel "Baby Durables, US, April 2016" Report].)  If the baby durables market were just like any other, there would be no need to study or prepare reports on this market specifically.  Dr. Kivetz's Report and Fisher-Price employee Sarah Ford's Declaration also undermine Plaintiffs' claim, as they explain that this market is characterized by unique consumer patterns and preferences, including doing significant research before purchasing and making purchasing decisions based on research or recommendations prior to reviewing or seeing marketing materials from a manufacturer or retailer.  (Dkt. No. 166-2 ¶¶ 85–91; Dkt. No. 166-5 ¶¶ 19–20.)  Plaintiffs provide no evidence to the contrary.

Second, Mr. Silverman's lack of *any* experience in the unique baby durables field—which Plaintiffs concede—renders his opinions inadmissible.  As Defendants' explained (Mot. 15–18), Mr. Silverman has no experience that would support his understanding of a baby durables consumer, which Mr. Silverman himself testified is a crucial principle in advertising.  (Dkt. No. 238-2, Ex. A to Supplemental Marshack Decl. [Silverman Dep.] at 121:22–124:17) (the "most important thing a good advertising person can do" is to be able to understand the relevant consumer).  While Mr. Silverman may have an impressive resume relating to *other* product categories, his report and testimony illustrate that he is not qualified to render opinions on the facts of *this* case.  This failure mandates the exclusion of his report and testimony.[6]  *See*

---

[6] Plaintiffs' arguments do not change the fact that, as set forth in Defendants' Renewed Motion (at 16, 21–22), in each of *Price*, *FLIR*, and *Harbor Breeze*, the court found that Mr. Silverman provided inadmissible or inappropriate testimony because he overstepped the scope of his experience, rendering his testimony unreliable (*Price*), improperly "bare" or "conclusory" (*Harbor Breeze*), or outside his "experience and outside his expertise" (*FLIR*).  Since the filing of their Renewed Motion, other courts limited Mr. Silverman's testimony when his conclusions are "unsupported by any evidence or reasoning" and therefore inadmissible.  *See, e.g.*, *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-cv-1228, 2022 WL 991518, at *13–16 (N.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559 (2d Cir. June 6, 2023); *Rydman v. Champion Petfoods USA, Inc.*, No. 18-cv-1578, 2023 WL 3172466, at *7 (W.D. Wash. May 1, 2023).

7

*Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 367 F. Supp. 2d 413, 448 (W.D.N.Y. 2005) (excluding testimony because, "despite his many credentials," the expert was not qualified to testify on the case-specific issues); *see also Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007) (limiting expert testimony because "testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702"); *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998) ("Just as a qualified and board certified heart surgeon does not possess sufficient knowledge of orthopedic medicine to render an expert opinion on spine surgery," expert was not qualified to opine on subject outside his field of expertise).

Plaintiffs provide no authority to the contrary.[7] In fact, the cases Plaintiffs cite (Opp. 18–19) actually *support* the exclusion of Mr. Silverman's testimony. For example, in *Arista Records LLC v. Lime Group LLC,* No. 06-cv-5936, 2011 WL 1674796, at *7 (S.D.N.Y. May 2, 2011), the Court excluded expert testimony about "issues that do not fall within [the expert's] experience and expertise." In *Packard v. City of New York,* No. 15-cv-7130, 2020 WL 1479016, at *3 (S.D.N.Y. Mar. 25, 2020), and contrary to the situation here, the expert at issue—a retired NYPD captain—had experience that was directly relevant to his proffered testimony on the NYPD's lack of appropriate training for police officers "as a retired captain of the NYPD with fifteen years of working in New York City law enforcement . . . and had extensive experience training officers and observing whether such training impacts their conduct." *Id*. at *3. Mr. Silverman, by contrast, has no experience in the relevant area of this case: the baby durables market. Accordingly, Plaintiffs fail to offer any convincing rebuttal to Defendants' showing that Mr.

---

[7] Plaintiffs' contention (Opp. 18 n.11) that Mattel previously hired Mr. Silverman is false. Mr. Silverman testified that approximately 40 years ago, Mattel hired Ogilvy & Mather, the firm for which Mr. Silverman worked. (Dkt. No. 238-2, Ex. A to Supplemental Marshack Decl. [Silverman Dep.] at 73:13–20.) Mr. Silverman has never worked for Fisher-Price. (*Id*. at 75:18–21.)

8

Silverman's lack of relevant experience renders his opinions unreliable and inadmissible.[8]

### B. Plaintiffs' Opposition Does Not Salvage Mr. Silverman's Unreliable Methodology Which Is Based Only on Speculation and Guesswork

Plaintiffs do not refute or address the deficiencies in Mr. Silverman's purported "methodology" that Defendants have identified (Mot. 21–25). Nor could they. Instead, they point (Opp. 23–24) to Mr. Silverman's CV and his "distinguished, half-century career in advertising" and argue that Mr. Silverman "is offering his expert opinion guided by his unique and extensive experience."

Plaintiffs miss the point. Defendants do not take issue with Mr. Silverman's "distinguished career"—they take issue with the fact that Mr. Silverman has no experience regarding the relevant consumer in this matter, and thus his "extensive" experience is insufficient to support his opinions. None of the work Mr. Silverman did for this case (*e.g.*, some Google searches, reviewing 14 packages) make his general marketing experience sufficient.[9] Because Mr. Silverman has reliable methodology and no experience that could tie his opinions reached to the facts of this case, his opinion must be excluded. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("A district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and

---

[8] Contrary to Plaintiffs' contentions (Opp. 21), Defendants' Renewed Motion did not insinuate that Mr. Silverman's testimony was partially admitted in *Bailey v. Rite Aid Corporation*, 338 F.R.D. 390, 401 (N.D. Cal. 2021). Mr. Silverman's testimony was admitted in that case for reasons not present here, such as that he viewed the relevant product's placement in the store. *See* Mot. 22. In this case, Mr. Silverman has never viewed a product display for the RNPS and does not even know what section of a store the RNPS could have been found. (*Id.*; Dkt. 222-4, Ex. B to Marshack Decl. [Silverman Dep.] at 265:23–266:11.)

[9] Plaintiffs mischaracterize Defendants as arguing that Mr. Silverman's methodology is unreliable because he did not conduct a survey. (Opp. 20.) That is not Defendants' position. While experience *can* be the basis for an expert opinion, it must be *relevant* experience.

the methodology used.") (brackets omitted).[10]  Plaintiffs also fail to address why Mr. Silverman previously opined that "there are simply too many variables in the individual purchase decision process to say that any one source of information, such as a label, is paramount in one's choosing a particular product"—the opposite of his opinion here.  (Mot. 19; Dkt. 222-2, Marshack Decl., ¶¶ 4–5; Dkt. 222-5, Ex. C to Marshack Decl. [Silverman's Reports in *Jovel v. Boiron, Inc.*, C.D. Cal. Case No. 11-CV-10803-SVW-SHX] ¶ 2 [Dkt. No. 178] and ¶ 33 [Dkt. No. 178-1].)  If all markets are the same, the only explanation for Mr. Silverman's shifting opinion is the side for whom he is working.

      **C.**    **The Silverman Declaration Should be Excluded Insofar as It Contains Improper Opinions Regarding Fisher-Price's Intent**

Plaintiffs' argument that Mr. Silverman does not opine as to Defendants' intent in paragraphs 46, 57, 81, 87, 102 and 147 of his report is wrong.  As explained (Mot. 25), Mr. Silverman claims "it is evident that Fisher-Price considered the products at issue to be 'Sleepers,'" among other opinions.  (Dkt. No. 202-3 [Silverman Decl.] ¶ 57.)  In addition to being improper and inadmissible under *Daubert*, these opinions have no foundation.  As illustrated by on-point case law that Defendants cited (Mot. 25), which Plaintiffs ignore, these improper opinions must be excluded.

**IV.**    **CONCLUSION**

The Court should strike the opinions in the Dennis Declaration based upon the Dennis Survey and the entirety of the Silverman Declaration.

---

[10] Plaintiffs do not even mention *Weiner v. Snapple Beverage Corporation*, No. 07-cv-8742, 2010 WL 3119452, at *8 (S.D.N.Y. Aug. 5, 2010), which is directly on point and illustrates Mr. Silverman's scant review of the record renders his opinion unreliable under *Daubert*.  *See* Mot. 21; *Weiner*, 2010 WL 3119452, at *8 (expert testimony that is "based on, at most, a cursory review of the underlying record in this action" is unreliable and should be excluded).

December 5, 2023

Lori G. Cohen
Brandon D. Cox (*pro hac vice*)
GREENBERG татик TRAURIG LLP
3333 Piedmont Road, NE, Suite 2500
Atlanta, GA 30305
(678) 553-1000
*cohenl@gtlaw.com*
*coxb@gtlaw.com*

Cheryl A. Possenti
GOLDBERG SEGALLA, LLP
65 Main Street
Buffalo, NY 14203
(716) 566–5400
*cpossenti@goldbergsegalla.com*

Raul E. Martinez
GOLDBERG SEGALLA, LLP
2 State Street, Suite 1200
Rochester, NY 14616
(585) 295-8353
*rmartinez@goldbergsegalla.com*

Respectfully submitted.

*/s/ Matthew P. Kanny*
Matthew P. Kanny (Cal. Bar No. 167118)
GOODWIN PROCTER LLP
520 Broadway, Suite 500
Santa Monica, CA 90401
(424) 436-3001
*mkanny@goodwinlaw.com*

Gerard J. Cedrone (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1849
*gcedrone@goodwinlaw.com*

Ariel E. Rogers (*pro hac vice*)
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063
(650) 752-3100
*arogers@goodwinlaw.com*

*Attorneys for Defendants*
*Fisher-Price, Inc., and Mattel, Inc.*